5/5/2021

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

MAY 5 2021 AM 10:36
FILED - USDC - BPT - CT

## EXHIBITS TO CIVIL COMPLAIN AND INJUNCTION

| | |
|---|---|
| Fernando G. IRAZU, *Pro Se;* | Case No.: 3:21 cv 618 (VAB) |
| *Plaintiff* | |
| V | |
| Margarita OLIVA SAINZ DE AJA; | |
| Kevin F. COLLINS; | |
| *Defendants* | |

**EXHIBIT A:** COURT-MANDATED STIPULATION OF 6/10/2016

**EXHIBIT B:** MEMORANDUM OF DECISION OF 9/2/2010

**EXHIBIT C:** LISTING AGREEMENT FROM COLDWELL BANKER GREENWICH OF 4/1/2021

EXHIBITS TO CIVIL COMPLAIN AND INJUNCTION

STATE OF CONNECTICUT

| | | |
|---|---|---|
| D.N. FST-FA-09-4017497S | : | SUPERIOR COURT |
| MARGARITA OLIVA SAINZ DE AJA, | : | J.D. OF STAMFORD/NORWALK |
| v. | : | AT STAMFORD |
| FERNANDO GABRIEL IRAZU | : | JUNE 10, 2016 |

**STIPULATION**

The Parties in the above-captioned action hereby agree and stipulate as follows:

1. That the marriage of the parties was dissolved by entry of a decree of Dissolution on September 2, 2010 at which time the Court (J. Harrigan) issued a Memorandum of Decision (the "Memorandum") setting forth orders relative to child custody, child support, alimony and equitable distribution of the marital estate, among others.

2. In full satisfaction of Plaintiff's Motion for Contempt #204 and/or any financial claims of any nature whatsoever, the parties agree that the Defendant shall no longer be responsible to pay Plaintiff any future or past due contributions for or on behalf of the minor children for child support, childcare expenses, medical expenses, children's activities, real property taxes, legal fees, private school tuition, summer camps and/or automobile related expenses for the minor children, among others.

3. Plaintiff is hereby satisfied with the alimony granted per the Memorandum and renounces to seek any modification on the subject.

4. In consideration of the provisions of Paragraph 2 and 3 as set forth hereinbefore, the Defendant hereby agrees that he will pay to Plaintiff FOUR HUNDRED THOUSAND ($400,000.00) DOLLARS from his distribution of net equity upon the sale of the former marital residence located at 10 Indian Pass, Greenwich, Connecticut (the "Property"), all pursuant to the Memorandum.

5. Subject to the proviso per 10 below, Plaintiff hereby acknowledges that Defendant by virtue of the terms set forth hereinbefore, shall be deemed to have satisfied in full all financial obligations set forth in this Stipulation and the Memorandum, and Defendant shall have no further obligation to pay any sums to Plaintiff.

6. As of the date hereof, the Defendant represents that he relies upon Plaintiff's representation regarding the tenets of co-parenting and that both parties will fully abide by said standards going forward, in particular each party shall provide with prior written travel notifications of the children and prior conferring on selection of tutors, sports and recreational camps, as well as college application process and in situ visits. Neither party shall require the consent of the other to travel with the

1

children. Within the context of those duties, the Plaintiff will allow the Defendant access to any and all information related to school's progress, tutors, reports of progress, travel authorizations, sports and recreational camps, college applications, U.S. and Spanish passport renewals, as well as sign all paperwork related to the issuance of Argentinean citizenship and passports of the children.

7. All of the obligations by the Plaintiff in terms of necessary repairs, maintenance and payments of mortgage and real property taxes of the Property shall be in compliance with the terms of the Memorandum.

8. The Plaintiff is hereby obliged to pay for and maintain in effect the insurance policy on the life of the Defendant for the exclusive equal benefit of the party's three (3) children until the youngest child attains the age of twenty-three (23) years.

9. The Child Support Obligations Trust established before the Court by the Defendant on May 7, 2014, is hereby without effect, and any and all of its terms are superseded by this stipulation.

10. The parties agree that if the Defendant were to have income as well as financial and patrimonial means comparable to the Plaintiff, the Defendant will assume his equal share of the post-secondary educational expenses of their children paid by the Plaintiff. Subjecto to the prior, if the Defendant were not to pay for those expenses, the Court shall retain jurisdiction over said issue pursuant to C.G.S. §46b-56(c) for all of the three (3) children of the marriage.

11. The Plaintiff shall within five (5) days hereof pay to the Defendant $20,000 in full satisfaction of any and all claims that he may have or claim to have against the Defendant.

12. The judgment lien recroded by Attorney Cavallo on the Greenwich land records in the approximate amount of $25,000 shall be the sole responsibility of the Defendant, to be paid from his distribution of the net equity realizd from the sale of the Property per the Memorandum.

Executed in the City of Stamford, Connecticut on June _10_, 2016.

Margarita Oliva Sainz de Aja
Plaintiff

Fernando Gabriel Irazu
Defendant, Pro Se

Kevin F. Collins, Esq.-Counsel for the Plaintiff

## Margarita Oliva Sainz De Aja v. Fernando Gabriel Irazu

Margarita Oliva Sainz De Aja v. Fernando Gabriel Irazu

FSTFA094017497S

-- September 02, 2010

MEMORANDUM OF DECISION

The plaintiff wife, 40, and the defendant husband, 41, married in New York City on October 18, 1995. The residency requirement of Conn. Gen.Stat. § 46b-44(c) has been satisfied by the plaintiff who has been a resident of this state for at least twelve months next preceding the date of the filing of the complaint seeking a decree of legal separation and additional orders. The plaintiff subsequently amended her request to a decree of dissolution (137). The parties have three children issue of the marriage, Victoria, 11, Martin, 10, and Ines, 7.

The plaintiff was born and educated in Spain, graduating from Granada school of Law in 1992 with a J.D. degree. She became an instructor at the school for the ensuing two years while she pursued a Ph.D. She enrolled in Harvard Law School, class of 1995, for an LL.M degree. She then began a career in international law in New York. After Victoria was born in late 1998 she returned to work. A live in nanny was employed for five years.

The defendant is an international banker. He is from Argentina where he was educated. He and the plaintiff first met in 1994. On their joint IRS form 1040 for 2008 (Pl.Ex. # 5) he reported total wages of $717,979 received from HSBC Securities. She reported receiving $141,576 wages from Allen & Overy LLP and $63,717 additional wages from her law firm. For 2007 (Pl.Ex. # 7) the plaintiff's W2 issued to her by Allen & Overy LLP listed wages as $347,743 and the defendant's W-2 issued by HSBC listed his wages as $84,732. The defendant is currently unemployed. Despite the earning capacity he demonstrated in the recent past it was not shown that he is avoiding available employment in the international banking industry. The court cannot apply earning capacity without a demonstration that there is work available to him.

The parties purchased a home in Greenwich, Connecticut known as 10 Indian Pass in 1997 for $700,000 with a mortgage of $139,000. An appraisal valued the parcel at $1,180,000 as of February 5, 2010 (Pl.Ex. # 2). The plaintiff continues to reside there with the children. The defendant moved out for the final time at the end of September 2009, to an apartment in Old Greenwich.

The causes of the breakdown of the marriage appear to the court to be the parties' inability to cooperate concerning decisions regarding their goals, their children's welfare and the

fulfillment of their respective careers. The court finds that each party must bear some responsibility for the irretrievable breakdown.

A proposed parental responsibility plan was submitted to the court by the plaintiff dated May 28, 2010(138). The plaintiff affirms that it is their intention to mutually and flexibly cooperate and co-parent the children keeping the children's best interests as their primary concern. The court finds that the proposal meets the considerations described in Conn. Gen.Stat. § 46b-56(c) in making the orders for custody and has concluded the proposal satisfies the provisions of Conn. Gen.Stat. § 46b-56. The court has reviewed the proposed orders submitted by the defendant (145) and (148) concerning custody but finds the plaintiff's proposal more appropriate.

Having reviewed the evidence in light of the relevant statutes and case law the court renders judgment dissolving the marriage on the ground of irretrievable breakdown. The following orders are included as part of the decree.

1. No alimony is awarded to the husband. The husband shall pay to the wife the sum of one dollar per year alimony until the first to occur of a modification pursuant to Section 46b-86, the death or remarriage of the wife or June 1, 2020.

The parties shall have joint legal custody of the minor children. The primary residence of the children will be with the wife. The court finds that it is their intention to mutually and flexibly cooperate and co-parent the children, keeping the children's best interests as their primary concern.

2. The husband shall immediately apply for unemployment compensation and, effective upon his receipt of the first payment to him of unemployment compensation, he shall pay to the wife child support for the three minor children as provided by the guidelines. On the first of each month, he shall provide to the wife a detailed report of his efforts to obtain employment, including any offer from a potential employer or headhunter.

In the event that the husband obtains employment, he shall notify the wife within ten days of his employment. Child support shall be modified on the husband's employment as provided by law.

In the event that the husband obtains employment, he shall pay a pro-rata share of the wife's child care expense and the cost of the children's activities based upon his income.

The parenting time for the husband with the children shall be as follows:

a.   Wednesday nights overnight until Thursday morning;

b.   Alternate weekends from Friday evening to Monday morning.

c.   Monday night for dinner in the weeks when the children have been with the wife for the preceding weekend.

3.   a.   The Real Property at 10 Indian Pass, Greenwich, Connecticut is joint owned. The wife shall continue to have exclusive possession of the marital residence. The wife shall pay all monthly expenses of the residence including maintenance and repairs except that the parties shall each pay one-half of the property taxes pertaining to the residence. On or before April 1, 2021, the year in which the youngest child reaches 18, the parties shall list the property for sale with a real estate broker at the then fair market value of the property. The wife shall also have the right to list the property for sale at any time between the date of the Decree of Dissolution and April 1, 2021 and the husband shall cooperate. The husband may demand an immediate sale upon the wife's remarriage, or cohabitation without proof of change in finances as required by Conn. Gen.Stat. § 46a-56b. At the closing of title regarding the sale of the marital residence, the first mortgage, any broker's commissions and all normal closing costs shall be paid and the remaining proceeds shall be divided equally after a credit is paid to the wife for the difference between the balance on the first mortgage on the date of the Decree of Dissolution and the balance of the mortgage on the date of the closing regarding the sale of the residence. Any sums due to the wife pursuant to any orders of the court shall be paid to the wife at the closing from the husband's portion of the net closing proceeds.

b.   The husband shall retain his one-quarter interest in an apartment in Buenos Aires, Argentina.

c.   The wife shall retain her interest in a beach house in Spain, subject to her mother's life estate.

d.   HSBC stock: all of the HSBC stock, including the shares which are still restricted, shall be divided equally between the parties. One-half of all of the shares which have been released to the husband in 2009 and 2010 shall be divided immediately by the transfer of one-half of the shares from the husband to the wife. The husband shall transfer one-half of the shares which shall be released to him in 2011 to the wife immediately upon the release of those shares to him.

e.   Joint HSBC savings account: The balance in this account shall be divided equally between the parties and the account shall then be closed.

f.   The sole accounts of the wife at Citibank shall remain her sole property. The sole account of the husband at Citibank shall be his sole property. The joint accounts of the parties at Citibank shall be closed.

g.   Morgan Stanley Smith Barney Account No. xxx413 and xxx448 shall be divided equally between the parties immediately.

h.   Retirement accounts: The husband's American Funds rollover IRA account xxx294, the husband's Vanguard HSBC Retirement Plan No. xxx317, the husband's Citigroup 401(k) and the wife's Allen Overy 401(k) account shall be divided equally by the transfer from the husband to the wife from the husband's American Funds IRA to an IRA in the name of the wife in the sum of $34,427.88, adjusted for any change in the total value of the retirement accounts due to market fluctuations from May 17, 2010, to the date of transfer.

The parties each shall have vacation time with the children as follows:

Each of the parties shall have one-half of the Christmas, February, March and April school breaks with the children.

Each of the parties shall have two weeks with the children during summer vacation.

These vacation periods shall supersede the regular parenting schedule and the regular parenting schedule shall resume at the end of each vacation period.

4. The wife shall continue to provide medical insurance for the minor children as available through her place of employment. Each of the parties shall pay one-half of all of the unreimbursed medical and dental expenses of the minor children.

The wife shall have parenting time with the children at all times when they are not with the husband.

5. a. The wife shall continue to be the owner of Northwestern Mutual Term Life insurance policy on the life of the husband in the face amount of $1,000,000 for the benefit of the three children of the marriage until the youngest child reaches the age of twenty-three. The husband shall be solely responsible for all premiums due on said life insurance policy. In the event that the husband fails to make a timely payment of a premium therefor, the wife shall have the right to pay the premium and to be immediately reimbursed by the husband therefor.

b. The wife shall continue to be the owner of a Northwestern Mutual term life insurance policy on her life in the face amount of $1,000,000 for the benefit of the minor children until the youngest child reaches age twenty-three. The wife shall be solely responsible for all premiums due on said life insurance policy. In the event that the wife fails to make a timely payment of a premium therefor, the husband shall have the right to pay the premium and to be immediately reimbursed by the wife therefor.

c. The terms of paragraph 5 shall be subject to modification by the court.

The husband and the wife shall discuss and confer with reference to matters of policy involving the children as to such topics as health, education, recreational activities, camps and colleges, and the parties will attempt to adopt a harmonious policy best suited for the best interests of the children.

6. The court shall retain jurisdiction in accordance with Section 46b-56c of the Connecticut General Statutes to enter orders for the educational support to the three children. The parties shall promptly execute all documents necessary to apply for a scholarship for the tuition of the parties' son Martin at the Brunswick School and each of the parties will pay one-half of the tuition for Brunswick School for the school year 2010 to 2011 in excess of the scholarship. For the year 2011 and going forward, the parties will

each pay one-half of the cost of any private school for any of the three children if they have agreed that the child will attend that private school.

If either party has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of said child, the husband or the wife, as the case may be, will promptly notify the other.

7. Each of the parties agrees to keep the other party currently advised of the other's residence and business addresses, telephone numbers and whereabouts of the children while said child is with the husband or the wife.

8. Either parent may apply for an Argentinean passport or Spanish passport for any of the children and the parties shall cooperate.

9. The husband shall indemnify and hold harmless the wife against all claims and all liability arising out of any business activity in which he has been involved during the marriage of the parties, including but not limited to Knightsbridge Partners LLC, KP Foods, LLC, KP Capital, LLC, The Knightsbridge Universal Group, Inc., Knightsbridge Development Investments, Inc., Kent partners, Inc. and KP Ventures Ltd. He shall immediately remove the wife from any and all capacities with respect to all such entities, including officer, director, member or any other capacity and henceforth he shall not name her in any capacity.

10. Except as provided in the orders pertaining to the residence, each of the parties shall be solely responsible for their own liabilities.

BY THE COURT

HARRIGAN, J.T.R.

Harrigan, Dennis F., J.T.R.



# COLDWELL BANKER
## REALTY

**Exclusive Listing Agreement**
*Connecticut*

SELLER(s): **Fernando G Irazu, Margarita Oliva Sainz de Aja**
PROPERTY ADDRESS: **10 Indian Pass, Greenwich, CT  06830** ("Property")
LISTING AGENT(s): **Cecilia  Nino** ("Designated Agent(s)")

*Sales Associate(s) and License Number(s)*

You, the Seller(s), hereby retain Coldwell Banker Realty f/k/a Coldwell Banker Residential Brokerage ("Coldwell Banker") as your one and only real estate broker with respect to the Property identified above and you grant to Coldwell Banker sole and exclusive right to list, market, sell and/or rent the Property during the Term set forth herein.

1. **TERM:** This Agreement shall begin on **April 1, 2021** and end at midnight on **October 1, 2021** ("Expiration Date"). The Term of this Agreement may be extended by mutual agreement; and, if you authorize an extension of any Multiple Listing Service (each an "MLS") listing of your Property, that shall also act as a like extension of the Term of this Agreement.

2. **LISTING PRICE:** You and Coldwell Banker agree that the Property will initially be listed at $ **1,795,000.00**, and that the Listing Price may be adjusted by mutual agreement.

3. **SCOPE OF COLDWELL BANKER REPRESENTATION:** The Designated Agent(s) named above has/have been appointed by Coldwell Banker to represent you, and will work in your best interest to procure a ready, willing and able Buyer (or Tenant/Lessee, as appropriate) of the Property in accordance with the price, terms and conditions specified in this Agreement, or other price and terms acceptable to you. You acknowledge that Coldwell Banker is being retained solely as a real estate broker and not as an attorney, tax advisor, lender, appraiser, surveyor, structural engineer, home inspector, property manager and/or other professional service provider; and that Coldwell Banker Agents do not assume any obligation to consult municipal records or authorities to confirm whether a property, as presently improved, complies with applicable municipal building and zoning codes, regulations and/or requirements. *You are advised to seek independent professional advice and counsel concerning the condition of the Property, legal and tax matters,* as well as other issues beyond the scope of real estate brokerage services offered by Coldwell Banker. In the event that Coldwell Banker provides you with names and/or resources for such advice and assistance, you understand and acknowledge that Coldwell Banker would be doing so as an accommodation only and that Coldwell Banker does not warrant or guaranty such services and/or providers. Coldwell Banker shall have no obligation to seek an extension to any date or deadline set forth in any written agreement between you and a Buyer, nor to seek the termination of any written agreement between you and a Buyer unless you, in a timely manner, explicitly make such a request in writing and Coldwell Banker specifically agrees, in writing, to accommodate that request.

4. **COLDWELL BANKER IS GRANTED THE SOLE AND EXCLUSIVE RIGHT AND AUTHORITY TO:** (a) Advertise the Property for sale and/or rent, and in relation thereto; (b) Cooperate with and offer compensation to Cooperating Brokers (including Buyers' Agents who represent the interests of the Buyer and not you, regardless of compensation structure) to the extent agreed to herein; (c) Post signs on the Property; (d) Photograph and/or record video images of the Property and distribute information about the Property, including electronic images, and in this regard you acknowledge and agree that any photographic, video and/or electronic images of the Property, as well as any related advertising, promotional and/or marketing materials that Coldwell Banker and/or its employees, agents, affiliates, servants or independent contractors create shall be and remain the sole and exclusive property of Coldwell Banker; (e) Manage and control the marketing of the Property; and (f) If requested, provide a copy of any written agreement for the purchase and sale of the Property to a Buyer's lender, appraiser, title company and/or closing attorney in order to facilitate the financing and/or closing of a purchase and sale of the Property. All the foregoing notwithstanding, it is expressly understood that you do NOT grant to Coldwell Banker or to its affiliated Sales Associates any right or authority to take any actions that would create binding obligations on your behalf.

5. **SELLER AGREES:**
   a. To cooperate with Coldwell Banker in every reasonable way and to refer all inquiries and offers for the purchase and/or rental of the Property to Coldwell Banker during the Term of this Agreement;
   b. To pay Coldwell Banker a fee for professional services ("Commission") equal to **5.000** % of the gross sales price if:
      (i) During the term of this Agreement a Buyer is procured ready, willing and able to purchase (which term shall include purchase, assignment, transfer, exchange or other conveyance) the Property or any portion thereof in accordance with the price, terms and conditions set forth in this Agreement, or upon such other price, terms and conditions as shall be acceptable to you; or
      (ii) During the Term of this Agreement the Property, or any portion thereof, is sold (which term shall include the sale, assignment, transfer, exchange or other conveyance) or becomes subject to an agreement or option to purchase or sell through the efforts of anyone, including you, to any person or entity including, but not limited to, a co-owner of the

EXCLUSIVE LISTING AGREEMENT                                  Page 1 of 6                                       Seller Initials _____

Coldwell Banker® and Coldwell Banker logos are registered trademarks of Coldwell Banker Real Estate LLC.   Operated by NRT New England LLC, a subsidiary of Realogy Brokerage Group LLC
Coldwell Banker is fully committed to the Fair Housing and Equal Opportunity Acts.         © 2020 Coldwell Banker. All Rights Reserved.                Revised May 1, 2020

Coldwell Banker Residential Brokerage - Greenwich, Old Greenwich . CT .                             Phone: (203)622-1100          Fax: (203)618-8925           **Fernando Irazu**
Cecilia Nino                                 Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

Property, spouse/domestic partner, relative or heir, holder of an equitable or other interest in the Property (such as a Right of First Refusal), etc. In the event the Property is assigned, transferred, exchanged or conveyed for nominal consideration (e.g., "one dollar and other valuable consideration"), then the Commission shall be calculated, as set forth above, based upon the Listing Price. In the case of a sale and/or transfer of an interest in the Property between co-owners, the Commission will be based upon the greater of the actual sale price and the Listing Price; and, if based on the Listing Price, the commission shall be pro-rated to reflect the percentage interest being transferred. For example, in the case of a sale or transfer of a fifty percent (50%) interest in the Property from one co-owner to another, the Commission will be calculated based on either the sale price or fifty percent (50%) of the Listing Price, whichever is greater; or

(iii) The Property, or any portion thereof, is sold or becomes subject to an agreement or option to purchase or sell within 180 days after expiration of the Term of this Agreement (the "Protection Period") to any person or entity who was introduced to the Property by anyone, including you, prior to the expiration of the Term of this Agreement (each an "Introduced Buyer"). However, in the event the Property is sold during the Protection Period to any Introduced Buyer with the participation of a licensed broker to whom you are obligated to pay a fee under the terms of a subsequent written exclusive listing agreement, then you will only owe to Coldwell Banker pursuant to this provision the difference, if any, between the Commission called for in this Agreement and any lesser amount you actually pay to such subsequent licensed broker.

c. If the sale of the Property entails the sale of land and the construction of a home and/or other structure(s) by you on the Property, then the Commission shall be calculated based on the aggregate of the price paid by the Buyer for the land and any building(s) and/or improvement(s) constructed thereon. In the event that a purchaser first buys unimproved land from you and you then construct a dwelling on the Property, then the Commission payable in connection with the sale of the land shall be due upon closing on the purchase of the land by the Buyer and the Commission payable in connection with the cost of the improvements shall be payable no later than the issuance of an occupancy permit for the building(s).

d. If you rent the Property to a Buyer/Tenant during the Term of this Agreement or during the Protection Period, as set forth in Paragraph 5 b. (iii) above, then you shall pay Coldwell Banker a Commission equal to ten percent (10%) of the total rent payments due under such rental agreement; and if you sell the Property to any such Buyer/Tenant during the term of such tenancy or within one (1) year after the termination of such tenancy (which term shall include any extension to and/or renewal of the original term) then, upon closing on the sale of the Property to said Buyer/Tenant, you shall pay to Coldwell Banker a Commission as set forth in Paragraph 5b. above.

e. To pay all Commissions and/or other compensation due hereunder no later than the closing date, including transactions that close after the Expiration Date of this Agreement; and you agree that Coldwell Banker may retain any earnest money deposits held in escrow and apply those deposit funds against any compensation due.

f. In the event that a Buyer enters into a contract to purchase the Property and thereafter defaults under the purchase contract and if, as a result of such Buyer's default, you retain any portion of any earnest money deposit given by such Buyer in connection with the purchase contract, then Coldwell Banker shall be entitled to one-half of any such deposit sum or an amount equal to the Commission that would have been due had the sale been consummated, whichever is less.

6. **NATURE OF COLDWELL BANKER'S REPRESENTATION:**
   a. **Designated Agency.** As authorized by Connecticut law, Coldwell Banker has adopted a policy of designating a specific Sales Associate (or Associates) to represent each Seller client as a Designated Seller's Agent and each Buyer client as a Designated Buyer's Agent. A Designated Agent owes the client fiduciary duties such as loyalty, reasonable care, disclosure, obedience to lawful instruction, accounting for funds and the obligation not to reveal to others confidential information obtained from the client without the client's prior consent; and this includes not disclosing confidential information to other Coldwell Banker Associates. However, a Designated Seller's Agent may disclose a client's confidential information to the Agent's Sales Office Manager or Designating Broker, for the purpose of seeking advice or assistance for the client's benefit. And, if the Sales Office Manager or Designating Broker is consulted in this manner, that person will not reveal such information to others, including other Coldwell Banker Sales Associates or to any other customers or clients. The Coldwell Banker Sales Associate(s) identified on page 1 of this Agreement has/have been appointed to act as your Designated Seller's Agent(s). Should the Designated Agent(s) named herein be unable to fulfill the terms of this Agreement, then another Designated Agent may be chosen during the term of your Agreement with Coldwell Banker. Appointment of another Designated Agent as a new or additional agent does not relieve any prior Designated Agent of the duty not to disclose confidential information. It is possible that Coldwell Banker may be representing both the Seller and Buyer in connection with the same real estate purchase and sale transaction. In the event that another Coldwell Banker Designated Agent represents the Buyer in a transaction with you and your Designated Seller's Agent, both parties will receive and be asked to sign a Dual Agency/Designated Agency Disclosure Notice and Consent Agreement form confirming that this fact has been disclosed to both parties.

   b. **Dual Agency.** In the event that the same individual Coldwell Banker Sales Associate represents both the Seller as a Designated Seller's Agent and the Buyer as a Designated Buyer's Agent in the same transaction, then this will create what is referred to as Dual Agency and will make the Sales Associate a Dual Agent. A Dual Agent is authorized to assist the Seller and Buyer in such a transaction, but is required to be neutral with regard to any conflicting interest of the Seller and Buyer. Consequently, a Dual Agent will not have the ability to satisfy fully the duties of loyalty, full disclosure, and obedience to all lawful instructions otherwise owed to a client by a Designated Agent if such would be to the disadvantage of either party; but a Dual Agent will

**EXCLUSIVE LISTING AGREEMENT**                Page 2 of 6                                 Seller Initials _____

Coldwell Banker® and Coldwell Banker logos are registered trademarks of Coldwell Banker Real Estate LLC.      Operated by NRT New England LLC, a subsidiary of Realogy Brokerage Group LLC
Coldwell Banker is fully committed to the Fair Housing and Equal Opportunity Acts.      © 2020 Coldwell Banker. All Rights Reserved.      Revised May 1, 2020

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com                Fernando Irazu

still owe to both Seller and Buyer the duties of confidentiality and to account for funds. Confidential information includes: (i) whether a Seller will accept less than the asking or listed price; (ii) whether a Buyer can pay a price greater than the price offered; (iii) the motivation of either a Seller or Buyer for selling or buying a Property; and (iv) whether a Seller or Buyer will agree to terms or conditions other than those offered. Confidential information that is obtained from either a Seller client or a Buyer client may not be disclosed by a Dual Agent, except: (1) if disclosure is expressly authorized by the party whose information is to be disclosed; (2) if such disclosure is required by law; (3) if such disclosure is intended to prevent illegal conduct; or (4) if such disclosure is necessary to defend a claim against the broker or licensee or to prosecute a claim against a person represented. This duty of confidentiality shall continue after termination of the brokerage representation relationship with respect to information disclosed during the Term of that brokerage relationship. A Dual Agent will not be able to prepare a comparative market analysis for either party after a Dual Agency situation arises, as it may adversely affect one party's bargaining position relative to the other party. If a comparative market analysis was prepared for either client and a Dual Agency situation subsequently arises, the Dual Agent may only provide that comparative market analysis to the other party with the prior consent of the party for whom it was initially prepared. In the event that a Dual Agency situation does arise, both Seller and Buyer will be asked to sign a Dual Agency/Designated Agency Disclosure Notice and Consent Agreement to confirm their consent to the Sales Associate acting as a Dual Agent. In the event that either the Seller or the Buyer in a given transaction does not consent to Dual Agency, then Coldwell Banker will designate another Sales Associate to represent one of the parties as their Designated Agent. In that event, each Designated Agent will offer to each party full Designated Agency representation, with the exception that the original Designated Seller's Agent will not disclose to either party any confidential information the agent may have previously gained about either client.

7. **COMPENSATION TO OTHER BROKERS:** You and Coldwell Banker agree that Coldwell Banker will offer to compensate Cooperating Brokers acting as a Buyer's Agent in a sum equal to ___**2.500**___ % of the contract price.

8. **SELLER'S REPRESENTATIONS, WARRANTIES AND ACKNOWLEDGMENTS:**
    a. **General:**
        (i) You hold clear and marketable title to the Property and/or are duly authorized to list and sell the Property.
        (ii) You are not in bankruptcy nor contemplating filing bankruptcy during the Term of this Agreement or, in the alternative, if you are in bankruptcy or file for bankruptcy protection during the Term of this Agreement, then you agree to take all actions necessary to secure authorization from the Bankruptcy Court for Coldwell Banker to act as listing real estate broker for the listing, marketing, sale and/or rental of the Property and to be compensated fully therefor as set forth in this Agreement, and you authorize Coldwell Banker to make any and all necessary disclosures to potential purchasers regarding the foregoing.
        (iii) You are not in default on the payment of any loan, debt, account or other obligation secured by a mortgage or other lien against the Property or, in the alternative, you have informed Coldwell Banker of any and all arrearages with respect to the foregoing and have supplied Coldwell Banker with copies of any and all written notices or other documentation you have received in relation to any party's effort or intention to institute foreclosure proceedings against you and/or the Property.
        (iv) You represent that there are or will be no other listing agreements with other real estate brokers for the sale of the Property in effect as of the beginning or commencement date of this Agreement, as recited in Paragraph 1 above.
        (v) You warrant that you will, during the term of this Agreement, maintain homeowner's insurance on the Property and that such insurance on the Property will protect against risk of loss of both personal property and from personal injury to persons on the Property, and you specifically agree that, in connection with any showing of the Property to prospective purchasers (including any "Open House" showings), you will take whatever action that you may deem necessary to safeguard items of personal property and you specifically acknowledge that Coldwell Banker does not provide security services and that Coldwell Banker shall not be responsible with respect to any loss of or damage to your Property, or injury to any person, that may occur during or in connection with showing the Property to prospective purchasers, home inspectors, appraisers or others permitted to enter on to the Property.
        (vi) You represent and warrant that: (1) any information furnished to Coldwell Banker in connection with the Property is true, accurate and complete to the best of your knowledge and belief; (2) you either own or are duly and legally licensed or otherwise authorized to print, publish, post, disburse, distribute and/or otherwise to make use of (collectively, to "Use") any photographs, images, drawings, renderings, graphic representations, plans, etc. (collectively "Images") that you may provide to Coldwell Banker; (3) you authorize Coldwell Banker to disclose any information furnished by you and/or to Use any Images you may have provided in connection with the performance of Coldwell Banker's services under this Agreement; and (4) you, further, agree to hold harmless and indemnify Coldwell Banker (and any Sales Associate affiliated with Coldwell Banker) with respect any claim, demand, action, cause of action, suit, and/or controversy whatsoever, whether in law, equity or otherwise, related to the disclosure of any of the foregoing information and/or Use of any Images described above.

**EXCLUSIVE LISTING AGREEMENT**                        **Page 3 of 6**                        **Seller Initials** _____
Coldwell Banker® and Coldwell Banker logos are registered trademarks of Coldwell Banker Real Estate LLC.        Operated by NRT New England LLC, a subsidiary of Realogy Brokerage Group LLC
⌂ Coldwell Banker is fully committed to the Fair Housing and Equal Opportunity Acts.        © 2020 Coldwell Banker. All Rights Reserved.        Revised May 1, 2020
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5  www.lwolf.com        Fernando Irazu

b. **Regarding Financial Obligations and Other Legal Matters Related To The Property:**

   (i) You represent that the amount of the proceeds that you anticipate receiving from the sale of the Property [X] **will be** / [ ] **will not be** sufficient to fully satisfy the aggregate amount of any existing mortgages, liens and/or financial encumbrances affecting the Property. If you do not have or do not anticipate having sufficient funds to satisfy all financial obligations and clear all mortgages and liens against the Property, you agree to use your best efforts to obtain from your lender(s) and/or lien holder(s), as the case may be, agreement to accept in full satisfaction of its debt such lesser sum as may be necessary to permit transfer of title free and clear of all encumbrances and to compensate Coldwell Banker fully as set forth in this Agreement. Please identify all known mortgages, liens and financial encumbrances affecting the Property, together with the approximate outstanding indebtedness applicable to each:
   [ ] First Mortgage $ _____   [ ] Second Mortgage $ _____   [ ] Home Equity $ _____
   Other: _____.

   (ii) If the Property is part of a condominium, cooperative, planned unit development or otherwise a part of and/or subject to the authority of a home owners' association ("HOA"), you represent that: (1) the current monthly association fee is $ _____ and that, unless noted below, you have no knowledge of a planned increase in the fee, and (2) to the best of your knowledge, the Property [X] **is not** / [ ] is subject to any current or anticipated special or extraordinary fees, assessments, charges or rents above and/or beyond any regular periodic condominium, cooperative, home owners' association fees, or the like. Please describe any applicable special or extraordinary fees, assessments, charges, or change in monthly fee(s), etc. (please write "N/A" if this paragraph is not applicable):
   _____

   (iii) You represent that, to the best of your knowledge and belief, the Property [ ] is/ [X] **is not** subject to existing or pending municipal betterment assessments (e.g., for public sewer, water, etc.) and that, if the Property *is* subject to any municipal betterment assessment, the details and total outstanding balance of such assessment(s) shall be fully disclosed to prospective purchasers before an offer to purchase the Property is accepted. Please describe any applicable Betterment Assessment(s): .
   _____

   (iv) You represent that the Property [ ] is/ [ ] **is not** served by a rented or leased hot water heater, propane tank and/or other facility, equipment or appliance; and that, if the Property is served by a rented or leased hot water heater or other facility, equipment or appliance, you will fully disclose this fact to any prospective purchaser prior to entering into any purchase and sale contract. Please describe any applicable rented or leased facility, equipment or appliance:
   _____

   (v) You represent that the Property [ ] is/ [ ] **is not** monitored by any audio or video surveillance equipment, and you understand and agree that: (1) if the Property is monitored by any video surveillance equipment, this fact must be disclosed to all persons prior to their entry onto the Property; and (2) if the Property *is* monitored by any audio *or* video surveillance equipment capable of recording transmitting to others and/or recording conversations this fact must be disclosed to all persons *and* such persons must provide their written consent to such audio surveillance prior to their entry onto the Property, unless such equipment is disabled prior to any person entering the Property (18 USC § 2511(2)(d); Conn. Gen Stat. § 53a-189 and §53a-189a). Please describe the nature and location of any applicable audio and/or video surveillance equipment:
   _____

   (vi) You represent that, to the best of your knowledge and belief, the Property is not subject to any encumbrances, easements, restrictions or other limitations on the owner's full and unfettered right to use and enjoy the Property free from interference of others (including HOA restrictions), nor are there any limitations on your right to sell the Property, except for the following:
   [ ] Easement   [ ] Right of Way   [ ] Restrictive Covenant   [ ] Right of First Refusal   [ ] Other
   Please explain any items checked (please write "none" if applicable): _____

9. **KEYS, SHOWINGS and LOCKBOXES:** Unless otherwise stated, Coldwell Banker shall retain a key to the Property and will have access for showing the Property to Cooperating Brokers and prospective purchasers. Coldwell Banker [ ] is/ [ ] **is not** granted permission to install a Lockbox/Keybox/Keysafe on the Property for the purpose of facilitating access to Cooperating Brokers and others authorized to examine the Property.

10. **MULTIPLE LISTING SERVICE AND INTERNET DISPLAY:** You grant to Coldwell Banker the sole and exclusive right to: (a) display the Property and related information on internet website(s) including, but not limited to **ColdwellBankerHomes.com** ; and (b) list the Property with any MLS and/or similar electronic database for publication to and by its participants and, in this regard - unless you notify Coldwell Banker in writing to the contrary -you hereby grant to Coldwell Banker express permission to enter your name into and/or transmit your name and/or upload or post documents (e.g., Lead Paint Disclosure Form) containing your name to such MLSs or electronic databases, understanding that the same may be accessible to persons other than your Designated Agent. Unless otherwise indicated under "special showing instructions" immediately below, you agree to permit other Brokers licensed in Connecticut to display the Property on their website(s) as part of the Internet Data Exchange program, a Virtual Office Web Site, or

**EXCLUSIVE LISTING AGREEMENT**          Page 4 of 6          Seller Initials _____
Coldwell Banker® and Coldwell Banker logos are registered trademarks of Coldwell Banker Real Estate LLC.   Operated by NRT New England LLC, a subsidiary of Realogy Brokerage Group LLC
Coldwell Banker is fully committed to the Fair Housing and Equal Opportunity Acts.   © 2020 Coldwell Banker. All Rights Reserved.   Revised May 1, 2020

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com   **Fernando Irazu**

otherwise on other similar media, at Coldwell Banker's option. You agree that neither any MLS nor Coldwell Banker is responsible for errors and/or omissions appearing in such MLS. You authorize Coldwell Banker to provide timely notice of status changes of this Exclusive Listing Agreement and to provide sales information, including selling price upon sale of the Property, to any applicable MLS.

**Special Showing Instructions** including exceptions to internet display: <u>**Call Cecilia for confirm appointment At lease 3 hours Continued... See Addendum Special Showing Instructions 1**</u>

11. **OFFERS and MULTIPLE OFFERS:** Coldwell Banker's obligation to *seek* offers shall terminate when you accept and sign a written offer provided, however, that Coldwell Banker will *present* all written and signed offers that are received even if they are received after an offer is accepted. You also agree that, in the event of a multiple offer situation, Coldwell Banker may disclose (to a Buyer who has submitted an offer and/or to any such Buyer's Broker) the fact that you have received other offers on the Property.

12. **COLDWELL BANKER AS ESCROW AGENT; DEPOSIT DISBURSAL and DISPUTES:** In its capacity as Escrow Agent with respect to any earnest money deposit ("Deposit"), Coldwell Banker will act as a neutral custodian of said funds. Coldwell Banker shall not place any Deposit(s) into its Escrow Account unless and until you and a Buyer sign a purchase contract upon receipt of which Coldwell Banker, as the Escrow Agent, shall promptly deposit any tendered Deposit(s) into its Escrow Account. Coldwell Banker's Escrow Account is non-interest bearing. All Deposits received by Coldwell Banker shall be duly accounted for at the Closing and transfer of the title to a Buyer, or at such other time as may be applicable. At the time of Closing, the Buyer shall receive credit for the full amount of the Deposit(s) paid by the Buyer. Coldwell Banker will disburse Deposit funds only to those persons and/or entities explicitly named as parties to any applicable purchase contract. You understand and acknowledge that Coldwell Banker's status as Escrow Agent shall have no effect on the ability of your Designated Agent or a Designated Buyer's Agent to represent the interests of their respective client(s). Coldwell Banker is not authorized to, nor does Coldwell Banker assume any duty to investigate, assess, evaluate, mediate, arbitrate or settle any dispute that may arise between you and a Buyer as to either party's entitlement to any Deposit(s)in the event of non-performance under a purchase agreement. In the event of any kind of dispute regarding the disposition of any Deposit(s) held in its Escrow Account, Coldwell Banker shall retain all Deposits in its Escrow Account until: (a) Coldwell Banker receives instructions mutually given in writing by you and the Buyer; or (b) Coldwell Banker receives documentation that the dispute has been resolved by a Court Judgment or other authorized adjudicatory entity and all applicable Appeal periods have expired without either party filing an Appeal; or (c) Coldwell Banker determines that it is required, under State law (i.e., Connecticut General Statutes Chapter 32 § 3-64a, et. seq.), due to the Buyer's and/or your failure to commence litigation within the applicable statutory period (i.e., three years), to transfer the funds to the State of Connecticut as unclaimed/abandoned property, in which event Coldwell Banker shall deduct from the Deposit(s) its reasonable administrative and/or legal costs and fees associated with such transfer. In the event the parties initiate litigation to resolve any dispute: (i) upon mutual agreement of the parties involved in any lawsuit regarding any Deposit(s), Coldwell Banker will transfer any disputed funds to the presiding court, but Coldwell Banker will *not* institute a legal action (e.g., "interpleader") to resolve such a dispute; (ii) you will *not* name Coldwell Banker as a party to any such litigation but, in the event that Coldwell Banker - in its capacity as escrow agent - is made a party to any lawsuit regarding Deposit(s) then Coldwell Banker shall be entitled to recover reasonable attorney's fees and legal costs associated with the defense of said lawsuit; and (iii) the prevailing party or parties seeking disbursal of any Deposit(s) as a result of a judgment or other adjudication shall be responsible for providing Coldwell Banker with documentation obtained from the court or authorized adjudicatory entity evidencing that said court or authorized entity rendered a judgment or other binding decision, and neither party appealed said judgment or decision within the applicable appeal.

13. **STATEMENTS REQUIRED BY LAW and/or THE NATIONAL ASSOCIATION of REALTORS'® CODE OF ETHICS:**
    a. This Agreement is subject to the Connecticut General Statutes prohibiting discrimination in commercial and residential real estate transactions (Connecticut General Statutes Title 46a, Chapter 814c). It is unlawful under Federal and State Fair Housing Law to discriminate on the basis of race, color, creed, religion, national origin, ethnicity, ancestry, sex (gender), marital status, age, sexual orientation, learning disability, physical or mental handicap, disability, disorder or retardation (including, but not limited to, blindness or deafness), familial status (families with children under age 18) and lawful source of income in the acquiring or disposition of real property.
    b. **THE AMOUNT OR RATE OF REAL ESTATE BROKER COMPENSATION IS NOT FIXED BY LAW. IT IS SET BY EACH BROKER INDIVIDUALLY AND MAYBE NEGOTIABLE BETWEEN YOU AND THE BROKER.**
    c. THE REAL ESTATE BROKER MAY BE ENTITLED TO CERTAIN LIEN RIGHTS PURSUANT TO CHAPTER 392 § 20-325a OF THE CONNECTICUT GENERAL STATUTES.
    d. Federal law requires the Owner(s) of "target property", which is generally defined as property constructed prior to 1978, to: (1) disclose the presence of lead-based paint or lead-based paint hazards; and (2) furnish any records, reports, inspections or other documents in the Owner's possession concerning these items.
    e. You understand that, while Coldwell Banker will represent you under the terms of this Agreement, Coldwell Banker may have or obtain listings on other properties; and, prospective purchasers of your Property may consider, make offers on or purchase either your Property or other properties while using Coldwell Banker's services.
    f. You understand and agree that, pursuant to the Uniform Property Condition Disclosure Act (Connecticut General Statutes Section 20-327b), you are required to disclose all known material information about the Property on the Residential Property Condition Disclosure Report ("Report") provided by Coldwell Banker; and Coldwell Banker shall provide the Report and

**EXCLUSIVE LISTING AGREEMENT**            Page 5 of 6            **Seller Initials** _____
Coldwell Banker® and Coldwell Banker logos are registered trademarks of Coldwell Banker Real Estate LLC.      Operated by NRT New England LLC, a subsidiary of Realogy Brokerage Group LLC
⌂ Coldwell Banker is fully committed to the Fair Housing and Equal Opportunity Acts.     © 2020 Coldwell Banker. All Rights Reserved.                   Revised May 1, 2020
Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com            **Fernando Irazu**

disclose all known material information to prospective purchasers. In the event that you fail to furnish a prospective purchaser with the Report prior to said prospective purchaser's execution of any binder, contract to purchase, option or lease containing a purchase option, you will be required by the aforementioned statute to provide a credit to such prospective purchaser in the sum of $500.00 at closing.

14. **ELECTRONIC SIGNATURES:** You and Coldwell Banker agree that the parties may use an electronic record, including a facsimile and/or e-mail, to make and keep this Agreement; and, both parties intend that such a faxed or e-mailed Agreement, containing either the original or copies of the parties' signatures, shall constitute a binding Agreement. Either party hereto has the right to withdraw consent to have a record of this Agreement provided or made available to them in electronic form, but such withdrawal of consent shall not act to withdraw any prior consent to this Agreement having been made or provided in electronic form. If checked below, you consent to the use of such electronic record and wish to use the following for purposes of this paragraph:
    ☐ Facsimile Number(s): _____
    ☒ E-mail Address(es): **fgirazu@gmail.com** _____
    Each party will promptly inform the other of any change in facsimile number and/or e-mail address.

15. **GENERAL TERMS OF AGREEMENT:** This document represents the entire agreement between you and Coldwell Banker and supersedes any other agreement of any nature and/or type, whether oral or written, which may exist between the parties in relation to the Property on the date of execution of this Agreement. This Agreement shall not be modified unless aid modification is in writing and signed by all parties to be bound by any such modification; verbal modifications shall not be enforceable. You may not assign this Agreement. This Agreement shall bind the respective officers, directors, agents, attorneys, executors, administrators, distributees, successors, heirs and assigns, as the case may be, of you and Coldwell Banker. You agree to indemnify and hold Coldwell Banker harmless from and against all loss, costs and/or expenses in connection with your breach of any term or condition of this Agreement and, more specifically in this regard, you agree to pay all of Coldwell Banker's Attorneys' Fees, legal costs and expenses incurred due to your breach of and/or Coldwell Banker's efforts to enforce any term or condition hereof. This Agreement shall be governed by the laws of the State of Connecticut.

16. **SELLER'S CONTACT INFORMATION:**
    Contact Phone: _____    E-Mail Address(es): **fgirazu@gmail.com** _____
    Contact Phone: _____    E-Mail Address(es): _____
    Seller's Address (if different from Property): _____

17. **ADDITIONAL TERMS AND CONDITIONS:** _____

**NOTE:** This is a legal document that creates binding obligations. If not understood, consult an attorney. The term "Seller" and "you" shall refer to and be binding upon all Sellers, their heirs and successors; and the term Broker shall include Coldwell Banker, its agents affiliates and successors.

**BY SIGNING BELOW,** Seller and Coldwell Banker acknowledge that they have read and understand the entire Agreement, including the provisions relating to Designated Agency and Dual Agency, and Seller and Coldwell Banker agree to all the terms, conditions and provisions hereof.

**Coldwell Banker Realty**

By: _____
Cecilia Nino

_____    _____
**Seller**                **Date**
**Fernando G Irazu**

_____    _____
**Seller**                **Date**
**Margarita Oliva Sainz de Aja**

| For Office Use: | |
|---|---|
| Manager: | |
| SIS#: | |
| Prop. Addr.: | 10 Indian Pass |
| | Greenwich, CT 06830 |

EXCLUSIVE LISTING AGREEMENT         Page 6 of 6         Seller Initials _____

Coldwell Banker® and Coldwell Banker logos are registered trademarks of Coldwell Banker Real Estate LLC.    Operated by NRT New England LLC, a subsidiary of Realogy Brokerage Group LLC
Coldwell Banker is fully committed to the Fair Housing and Equal Opportunity Acts.    © 2020 Coldwell Banker. All Rights Reserved.    Revised May 1, 2020

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com    Fernando Irazu

# ADDENDUM

PROPERTY: **10 Indian Pass, Greenwich, CT  06830**

**1) Special Showing Instructions**
**notice**
.

Date: _____   Date: _____

Signature                              Signature

Date: _____   Date: _____

Signature                              Signature

**Addendum**

Coldwell Banker Residential Brokerage - Greenwich, Old Greenwich . CT .          Phone: (203)622-1100    Fax: (203)618-8925    Fernando Irazu
Cecilia Nino          Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com