UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------x
:
Fernando G. IRAZU,                :         3:21 CV 618 (VAB)
*Plaintiff*                       :
                                  :
v.                                :
                                  :
Margarita OLIVA SAINZ DE AJA,     :         MARCH 8, 2022
Kevin F. COLLINS, and             :
Jeffrey A. DIAMOND                :
*Defendants*                      :
------------------------------------------------x

## RULING RECOMMENDING DISMISSAL

On May 5, 2021, plaintiff Fernando Irazu commenced this action, *pro se*, against Margarita Oliva Sainz De Aja ("Oliva Sainz De Aja"), the plaintiff's former wife, and Kevin F. Collins ("Collins"), defendant Oliva Sainz De Aja's divorce attorney, alleging, pursuant to 42 U.S.C. § 1983: (1) an "ongoing attempt to illegally appropriate [the plaintiff's] entire patrimony with fraudulent intent—against preexistent agreements and applicable law to the parties"; and (2) "plain abusive, vexatious and unethical dealings before local and international courts, when not criminal conduct per federal normative." (Doc. No. 1 at 5).

On May 25, 2021, following a referral from the Court (Bolden, J.) (*see* Doc. No. 8), the undersigned issued a Ruling on the Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* and Ruling Recommending Dismissal (Doc. Nos. 9-10 ["May Recommended Ruling"]) in which the Court granted the plaintiff's *in forma pauperis* application and recommended dismissal of the plaintiff's claims without prejudice. (Doc. Nos. 9-10).

1

In the May Recommended Ruling, the Court discussed the plaintiff's theory that "the defendants, through defamatory, vexatious, abusive, unethical, and fraudulent actions, destroyed his career, reputation, finances, mental health, and relationship with his children, in deprivation of his First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment rights." (Doc. No. 10 at 2). The Court then recommended dismissal without prejudice for failure to state a claim because the plaintiff "[brought] forth a [Section] 1983 claim against private citizens that were not acting under color of state law." (*Id.* at 3). Specifically, the Court reasoned:

> As stated previously, the basis of the plaintiff's claims is that the defendants, through fraud, gamesmanship, defamation, and unethical conduct, deprived him of his constitutional rights. Because neither defendant is a state actor, a fact that the plaintiff makes clear on the face of his Complaint, the plaintiff must show that the defendants acted in concert with state officials in order to maintain his [Section] 1983 claim. . . . In the underlying facts section of his Complaint, the plaintiff alludes to "multiple illegalities from the Greenwich Police Department as well as others within the State of Connecticut." Read liberally, the plaintiff's Complaint suggests—albeit vaguely—that the defendants operated in concert with unnamed state actors and, accordingly, acted under color of state law in depriving him of his constitutional rights. The nucleus of the plaintiff's claims, however, does not allege that the defendants participated in joint activity with state actors to deprive him of his rights. Rather, the plaintiff maintains that the defendants' joint activity, *i.e.* breaching the divorce stipulation, commencing vexatious litigation, and defaming him, "perverted the legal process to their own illegal benefit" and caused the damages of which he complains.

(*Id.* at 4 (internal citations omitted)). The Court thereby found that the plaintiff made "no substantive representations that the defendants participated jointly with state actors to deprive him of his constitutional rights," and as such, the plaintiff's claims under Section 1983 were not viable. (*Id.* at 5).

On June 2, 2021, the plaintiff filed three motions: a Motion for Clarification of the May Recommended Ruling (Doc. No. 11); an Objection to the May Recommended Ruling (Doc. No. 12); and a Motion for Leave to file under seal (Doc. No. 13). On June 15, 2021, the Court (Bolden,

2

J.) adopted the May Recommended Ruling and denied the plaintiff's three motions as moot, stating in particular:

> The Court adopts the Recommended Ruling for the reasons stated in that ruling and, accordingly, orders the case dismissed without prejudice to Plaintiff filing an Amended Complaint, providing the level of detail recommended by Judge Spector in the Recommended Ruling, by **July 9, 2021**. As a result, the Court also **DENIES** as moot the pending motion to participate in electronic filing; motion for clarification and objection; and sealed motion.

(Doc. No. 16 (emphasis in original)). The case was dismissed without prejudice to the plaintiff filing an amended complaint. (*Id.*).

On June 21, 2021, the plaintiff filed an Amended Complaint, adding Jeffrey A. Diamond ("Diamond") as a defendant, in addition to Oliva Sainz De Aja and Collins. (Doc. No. 17). On February 15, 2022, the Court (Bolden, J.) referred review of the Amended Complaint to the undersigned. (Doc. No. 18).

For the reasons set forth below, the Court respectfully recommends dismissal with prejudice of the plaintiff's claims against all the defendants. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

I.   LEGAL STANDARD

As the Court explained in the May Recommended Ruling, Section 1915 provides, in relevant part:

> [A]ny court of the United States may authorize the commencement of any suit . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] possess that the person is unable to pay such fees or give security therefor.

28 U.S.C. § 1915(a)(1). The same statute that authorizes the Court to grant *in forma pauperis* status to a plaintiff also contains a provision that protects against the abuse of this privilege. Subsection (e) provides that the Court "shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted;

or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

II.     MERITS OF THE AMENDED COMPLAINT

Turning to the merits of the Amended Complaint, the Court presumes familiarity with its May Recommended Ruling. In his Amended Complaint, the plaintiff asserts his claims under Section 1983 against the same defendants named in his Initial Complaint (Oliva Sainz De Aja and Collins) and names an additional defendant, Diamond, in his individual and official capacity. Diamond is "the Family Caseflow Coordinator in charge of scheduling judges for hearings on family matters, determining their availability and selection, as well as of managing motions for continuance and reviewing various motions, among other highly relevant functions in the ordinary function of the local legal system." (Doc. No. 17 at 1-2).

As explained in the May Recommended Ruling, the plaintiff brings suit under Section 1983 for allegations of "sustained abuse of process" regarding the defendants' actions pursuant to the October 1, 2009 divorce proceedings between the plaintiff and Oliva Sainz De Aja. (Doc. No. 1 at 9; Doc. No. 17 at 12). Specifically, the plaintiff claims that the defendants "have resorted to the local legal system . . . including in particular the State-Actor—with whom the Defendants acted in concert—, with the goal of benefiting themselves financially while infringing the Plaintiff's constitutional and civil rights as well as inflicting damage on his life." (Doc. No. 17 at 6). These infringements occurred during the "ongoing attempt to illegally appropriate the Plaintiff's entire patrimony with fraudulent intent—against preexistent agreements and applicable law to the parties." (*Id.* at 7). The plaintiff makes several prayers for relief: "(i) For All Defendants to be permanently enjoined from engaging in the unlawful conduct described herein within and/or outside the legal system, as the case might be; (ii) For general, compensatory and punitive damages

in an amount according to proof; (iii) For pre and post-judgment interest on all damages as allowed by law; (iv) For attorney fees under existing law and costs of suit incurred herein; and (v) For such other and further relief as the Court may deem just and proper." (*Id.* at 51).

Section 1983 does not create a right in and of itself, but instead protects rights established by the Constitution and laws of the United States. *Bapat v. Conn. Dep't of Health Servs.*, 815 F. Supp. 525, 531 (D. Conn. 1992) (citing *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617 (1979)). Therefore, any claims brough under Section 1983 must allege all elements of a constitutional or statutory claim upon which the Section 1983 claim is based. Here, the plaintiff's theory is that the First, Fourth, Fifth, Six, Eighth, Ninth, and Fourteenth Amendments are implicated.[1] (Doc. No. 17 at 7). In particular, the plaintiff alleges that his constitutional claims "pertain[] to due process violations and the Plaintiff's unequal treatment under the law before local courts." (*Id.* at 6).

For the foregoing reasons, the Court respectfully recommends that the Amended Complaint be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii), for failure to state a claim.

    A.    <u>THE ALLEGED CONSTITUTIONAL VIOLATIONS</u>

The plaintiff's theory under Section 1983 is for violations of the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment.[2] (Doc. No. 17 at 6-7). Specifically, the Amended Complaint alleges that Diamond, in both his "individual and official capacity," (Doc. No. 17 at 3), violated the plaintiff's due process rights when he "sped up a civil process towards a divorce

---

[1] The plaintiff also alleges "abuse of process," (Doc. No. 17 at 39), but, given that abuse of process is a common law tort and not a constitutional or statutory violation, such an allegation does not fall under the purview of Section 1983.
[2] The plaintiff does not appear to allege facts supporting any theory that Diamond, as the state actor in the plaintiff's Section 1983 claims, violated the plaintiff's First, Fourth, Fifth, Sixth, Eighth, and Ninth Amendment. Instead, his constitutional claim appears to be brought under the Fourteenth Amendment for alleged violations of due process. (Doc. No. 17 at 6).

trial centered on false criminal allegations when the Plaintiff had no counsel by scheduling it within weeks, but delayed for months and years civil actions from [Oliva Sainz De Aja and Collins] or the Plaintiff if it was conducive to the other side's case and goals." (*Id.* at 39). The plaintiff also claims that Diamond was "screening and rejecting" his pleadings and "returning some of them by mail, even when those same motions had been reviewed and approved by a seasoned family law litigator of several decades before such same court."[3] (*Id.*).

1. ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment provides immunity to a state's treasury against claims for monetary damages brought by private entities in federal courts. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996). This immunity also extends beyond the state itself to state agents and instrumentalities that are "effectively, arms of a state." *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 152-53 (2d Cir. 2013) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). Stated differently, "a suit against a state official in [his] official capacity is not a suit against the official but rather is a suit against the official's office" and therefore "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)

---

[3] The plaintiff appears to allege claims against several state court judges involving said judges' conduct during state court proceedings. To whatever extend this is true, this Court does not have subject matter jurisdiction over those claims under the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983). This doctrine precludes federal district courts from viewing final judgments from state courts. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005) (barring federal district courts from deciding cases brought "by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments."). Specifically, the *Rooker-Feldman* doctrine applies where the plaintiff "(1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered." *Chmura v. Norton, Hammersley, Lopez & Skokos PA*, No. 3:17-cv-2164 (MPS), 2018 U.S. Dist. LEXIS 78482, at *6 (D. Conn. May 9, 2018) (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014)). The *Rooker-Feldman* doctrine relates to a district court's subject matter jurisdiction, *Lance v. Coffman*, 549 U.S. 437, 439 n.* (2007), and may be raised *sua sponte* by a court at any time. *Cruz v. Superior Court Judges*, No. 3:04CV1103(CFD), 2005 U.S. Dist. LEXIS 4543, at *17-18 (D. Conn. Mar. 21, 2005) (citing *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir. 1996) (holding that challenge under *Rooker-Feldman* doctrine goes to subject matter jurisdiction and may be raised *sua sponte* by the court)).

(citation omitted). This is because "[w]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945). Therefore, "[t]he Eleventh Amendment bars a damages action in federal court against . . . state . . . officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015). Judicial employees, such as law clerks and legal secretaries like Diamond, are considered state officials whose official duties are immunized from claims under the Eleventh Amendment. *See e.g.*, *Casaburro v. Giuliani*, 986 F. Supp. 176, 182 (S.D.N.Y. 1997) (dismissing claims against state court clerk in official capacity suit on Eleventh Amendment grounds); *Davis v. New York*, No. 90-CV-6170, 1991 WL 156351, at *2 (S.D.N.Y. Aug. 6, 1991) (same), *aff'd*, 106 F. App'x 82 (2d Cir. 2004); *Caldwell v. James*, No. 14-CV-5384JSARL, 2015 WL 427980, at *3 (E.D.N.Y. Jan. 30, 2015) (same).

And while a state—and by extension, its officials—may be sued in federal court if that state waives its Eleventh Amendment immunity itself or if Congress has abrogated that state's Eleventh Amendment immunity, *see Mahon v. Diaz*, No. 15-CV-5757 (LAP), 2015 U.S. Dist. LEXIS 193837, at *7 (S.D.N.Y. Dec. 15, 2015) (citing *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)), no such waiver or abrogation has occurred here. Critically, waiver *cannot* occur here. Waiver of Eleventh Amendment immunity has been found previously where a state voluntarily appeared in court to defend itself on the merits of the case. *See e.g., Gunter v. A. Coast Line R.R.*, 200 U.S. 273, 284 (1906). It should be noted, however, that Diamond has not appeared before this Court in this matter. And even if Diamond *did* appear to defend himself on the merits of the case,

this Court would still not have subject-matter jurisdiction over claims against Diamond in his official capacity because "Section 1983 was not intended to override a state's sovereign immunity." *Mamot v. Bd. of Regents*, 367 Fed. App'x 191, 192 (2d Cir. 2010) (citing *Quern v. Jordan*, 440 U.S. 332, 340-42 (1979)). This is to say that "there is no subject matter jurisdiction over Plaintiff's claims for monetary relief against the State defendants as the Supreme Court has stated that neither a State nor its officials acting in their official capacities are persons under [Section] 1983." *Casaburro*, 986 F. Supp. at 182 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)) (internal quotations omitted). As such, the plaintiff cannot bring monetary claims under Section 1983 against Diamond in his official capacity.

Accordingly, the Court respectfully recommends that the plaintiff's monetary claims against Diamond in his official capacity be dismissed with prejudice, as any attempts to amend the Amended Complaint would be futile. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (giving courts authority to dismiss claims based on "an indisputably meritless legal theory"); *Seniw v. Town of Fairfield Police Dep't & John Doe*, No. 3:18CV00813(JCH), 2018 U.S. Dist. LEXIS 220751, at *5 (D. Conn. July 2, 2018) (citing *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("Where a proposed amendment would be futile, leave to amend need not be given.")).

### 2. ABSOLUTE QUASI-JUDICIAL IMMUNITY

Nor can the plaintiff recover against Diamond in the individual capacity, as he is shielded by absolute quasi-judicial immunity. Individual capacity suits seek to "impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Here, however, Diamond enjoys absolute immunity from any claims under Section 1983 for acts performed "in a judicial capacity." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009); *Abrahams v. Appellate Div. of the Supreme Court*, 473 F. Supp. 2d 550, 564 (S.D.N.Y. 2006)

(citing *Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir. 1997)). This is because, although Diamond is not a judge, judicial employees whose official duties are "integral to the judicial process" also enjoy absolute quasi-judicial immunity. *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (stating it is "well established that officials acting in a judicial capacity are entitled to absolute immunity against [Section] 1983 actions, and this immunity acts as a complete shield to claims for money damages"); *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) (dismissing Section 1983 claim against court clerk under doctrine of judicial immunity). Judicial employees whose acts are "of ministerial functions" are entitled to qualified immunity. *Wingate v. Quattrochi*, No. 14-CV-2666 ARR, 2014 WL 2091245, at *2 (E.D.N.Y. May 15, 2014) (citing *Rodriguez*, 116 F.3d at 66).

Determinations of whether absolute judicial or qualified immunity applies to a particular officer are based on a "functional" approach, insofar that "immunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988); *see also Bliven*, 579 F.3d at 210 (explaining, in suit against judge, that "[i]n employing this functional analysis, the Supreme Court generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature"). Here, a court has inherent power to control its docket as a part of its function in resolving disputes between parties, and as such, judicial employees advancing this function are afforded absolute immunity. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 433-34 n.8 (1993). Moreover, courts have repeatedly found that actions related to scheduling and management of motion practice are shielded by absolute quasi-judicial immunity. *See e.g.*, *Peker v. Steglich*, 324 F. App'x 38, 39-40 (2d Cir. 2009) (finding that a judicial law clerk's "perform[ance of] a task that was basic and integral to the judicial function, namely the processing of an appeal," constitutes judicial, rather than ministerial, conduct); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 525-26 (E.D.N.Y. 2010)

9

(granting immunity to Family Court clerk for claims arising out of his failure to process the plaintiff's motions); *Caldwell*, 2015 U.S. Dist. LEXIS 11868, at *8 (E.D.N.Y. Jan. 30, 2015) (granting immunity to chief clerks of state court for "'return[ing]' several unspecified 'motions'" where "such papers were 'never forwarded to the Judge's Chambers for consideration'"). As such, Diamond is entitled to absolute quasi-immunity for any monetary claims related to docket management, such as scheduling court appearances and processing of motion practice.

The plaintiff is similarly foreclosed from equitable relief against Diamond in his individual capacity. Under amendments to 42 U.S.C. § 1983, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983, as amended by Federal Courts Improvement Act of 1996, § 309(c), PUB. L. NO. 104-317, 110 STAT. 3847, 3853 (1996); *see also Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2005); *McKnight*, 699 F. Supp. 2d at 524-25 (E.D.N.Y. 2010). Here, where the plaintiff alleges misconduct in Diamond's scheduling and docket management, the plaintiff could have sought declaratory relief in state court, but either failed to seek such relief or the request for that relief was denied. *See e.g., Bracci v. Becker*, No. 1:11-CV-1473 MAD/RFT, 2013 WL 123810, at *5 (N.D.N.Y. Jan. 9, 2013), *aff'd*, 568 F. App'x 13 (2d Cir. 2014) (finding equitable claims barred by judicial immunity where plaintiffs did not seek declaratory relief in state court and/or previous requests for such relief were denied). Therefore, the 1996 Amendments to Section 1983 bar the plaintiff's claims for injunctive relief against Diamond.

### 3. FAILURE TO STATE A CLAIM

Even if the claims against Diamond were not barred by the Eleventh Amendment and absolute quasi-judicial immunity, the plaintiff has still not stated a claim for which relief can be

granted under Section 1983. It is the plaintiff's duty—particularly here, where the plaintiff is a registered attorney[4]—to sufficiently plead enough facts to state a claim. Any valid claim must "raise a right to relief above the speculative level" by stating "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see generally* FED. R. CIV. P. 8(a)(2). A claim is "facially plausible" where the factual content of said claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is not to say that a valid complaint requires "detailed factual allegations." *Twombly*, 550 U.S. at 570. However, the plaintiff must "disclose sufficient information to permit the defendant 'to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'" *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). This is known as "fair notice," and is defined as notice "which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (additional citations and internal quotations omitted)).

---

[4] The plaintiff is "admitted to practice law in the State of New York, before the Supreme Court of Justice, and in Argentina." (Doc. Nos. 1 at 3, 17 at 3). While "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)), here, the plaintiff *is* a lawyer. "[T]he rules afforded *pro se* litigants are not relaxed when that litigant is also an attorney." *Sembler v. Attention Funding Tr.*, No. 07 CV 2493 (RJD)(LB), 2009 U.S. Dist. LEXIS 79323, at *4-5 (E.D.N.Y. Sep. 3, 2009) (quoting *Larsen v. JBC Legal Group, P.C.*, 533 F.Supp.2d 290, 295 n. 2 (E.D.N.Y. 2008)). This is to say that the Court will not construe the *pro se* attorney-plaintiff's pleadings liberally "to raise the strongest arguments they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Leeds v. Meltz*, 898 F.Supp. 146, 149 (E.D.N.Y. 1995), *aff'd*, 85 F.3d 51 (2d Cir. 1996) (*pro se* attorney not entitled to the liberal reading normally afforded to *pro se* litigants); Gray v. City of N.Y., No. 10-CV-3039 (SLT)(CLP), 2014 U.S. Dist. LEXIS 202727, at *37 (E.D.N.Y. Feb. 24, 2014) (internal citation omitted) (holding that disbarred attorney-plaintiff "not entitled to the degree of liberality given to non-attorney *pro se* plaintiffs"); *Moore v. City of New York*, No. 08-CV-2449 (RRM)(LB), 2011 WL 795103, at *1 (E.D.N.Y. Feb. 28, 2011) (same); *Heller v. Emanuel*, No. 07-CV-1393 (ARR), 2007 WL 1491081, at *2 (E.D.N.Y. May 21, 2007) (same).

The plaintiff alleges that "[a]s objectively described per [Paragraphs] 25, 58-64, 78-81, and 107 above, the hearings of 7/11-13/2017 before *Judge Donna Heller* literally operated as a joint legal team between the State and Mr. Collins, while unsuccessfully trying to cover the formalities of an impartial process already destined to be *'resolved'* for Ms. Oliva." (Doc. No. 17 at 41 (emphasis in original)). On a generous reading of the Amended Complaint, the plaintiff has not alleged any facts that plausibly give rise to claim that Diamond—or any state actor, for that matter—worked in concert with Oliva Sainz De Aja and Collins to deprive the plaintiff of his constitutional rights. The plaintiff claims, in relevant part, that Collins "leverag[ed] his access and influence among key personnel of the local legal system, -needless to say acting in concert with and through [Diamond]-, including his personal knowledge of local judges and decades of experience before them." (*Id.* at 10). This included alleged attempts by Oliva Sainz De Aja and Collins to "preclude the Plaintiff from even making his case before the local court as well as to obtain an order for him not to appear in court ever again, all in concert with Mr. Diamond." (*Id.* at 31).

Here, the plaintiff has not alleged enough facts for the Court to reasonably infer that the defendants could be liable under Section 1983. The plaintiff must allege facts beyond "conclusory, vague, or general allegations" to assert the existence of an agreement to inflict a constitutional injury. *Ciambriello*, 292 F.3d at 324-25. But here, the plaintiff has not alleged *any* facts—circumstantial or otherwise—beyond his conclusory statements that the defendants worked "in concert," and thus cannot prevail on a claim for conspiracy under Section 1983. *See e.g.*, *Longi v. New York*, No. CV-02-5821 (SJF)(JO), 2006 WL 8441210, at *24 (E.D.N.Y. June 26, 2006), *aff'd*, 363 F. App'x 57 (2d Cir. 2010) (dismissing conspiracy claims under Section 1983 for failure to state a cause of action where plaintiffs merely alleged that private defendant and state-actor

defendant "met at an unspecified time and place" and "fail[ed] to allege that those parties actually agreed to inflict an unconstitutional injury upon plaintiffs, or that either party committed an overt act in furtherance of any such agreement."); *see also Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012) (stating that Section 1983 conspiracy claim against private individuals required more than "pleading simply, and in conclusory fashion that the defendant 'conspired' with state actors") (citing *Ciambriello*, 292 F.3d at 323).

Accordingly, because the Amended Complaint asserts no viable constitutional claim against a state actor, it suffers from the same deficiency as the Original Complaint. *See Flores v. Levy*, No. 07-CV-3753 JFB WDW, 2008 WL 4394681, at *8 (E.D.N.Y. Sept. 23, 2008) (holding that if plaintiff were allowed to go beyond pleading stage of litigation "simply by alleging in a conclusory fashion a 'conspiracy' between private actors and state actors, these private actors— including lawyers and witnesses—would be subjected to the substantial cost and disruption incurred by litigants in the discovery phase of these lawsuits, without any indication whatsoever that the plaintiff has a 'plausible' conspiracy claim."). As a result, the Court must respectfully recommend that all the claims against all the defendants in the Amended Complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii).

III. CONCLUSION

For the reasons stated above, the Court recommends that Amended Complaint be **DISMISSED WITH PREJUDICE**, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii).

This is a recommended ruling. *See* FED. R. CIV. P. 72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen (14) days after filing of such order. *See* D. CONN. L. CIV. R. 72.2(a). Any party receiving notice or an order or

recommended ruling from the Clerk by mail shall have five (5) additional days to file any objection. *See* D. CONN. L. CIV. R. 72.2(a). Failure to file a timely objection will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a) & 72; D. CONN. L. CIV. R. 72.2; *Impala v. United States Dept. of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order) (failure to file timely objection to Magistrate Judge's recommended ruling will preclude further appeal to Second Circuit); *Small v. Secretary of H.H.S.*, 892 F.2d 15 (2d Cir. 1989) (per curiam).

Dated at New Haven, this 8th day of March 2022.

/s/ Robert M. Spector, USMJ
Robert M. Spector
United States Magistrate Judge
